UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------X

DEYSON CARDONA VARGAS,
EDWARD GOMEZ and
ARMANDO MEDINA, on behalf of
themselves and all others similarly situated,

                                                         Plaintiffs,

CLASS ACTION
COMPLAINT

FLSA COLLECTIVE
ACTION

- against -

BRITANNICA FLOOR COVERING, INC.,
and THE BEST WALLCOVERING CORP.,
and KENNY CUADROS, MICHAEL KAHOUD,
MANUEL CHERRES and RODOLFO CHERRES,
individually,

                                                           Defendants.

-------------------------------------------------------------------------X

Plaintiffs Deyson Cardona ("Cardona"), Armando Medina ("Medina") and Edward
Gomez ("Gomez") (collectively "Plaintiffs"), by and through their attorneys, Beranbaum
Menken LLP and The Law Offices of Jacob Aronauer, complaining of The Best Wallcovering
Corp ("BW Corp") and Britannica Floor Covering, Inc. ("BFC Inc.") (collectively the
"Defendant Corporations") and Kenny Cuadros ("Cuadros"), Michael Kahoud ("Kahoud"),
Manual Cherres ("M. Cherres") and Rodolfo Cherres ("R. Cherres") (collectively "Defendants")
on behalf of themselves and all others similarly situated, allege as follows:

## NATURE OF THE ACTION

1.     Plaintiffs bring this action on behalf of themselves and all similarly situated current and
former non-exempt workers who elect to opt-in to this action pursuant to the Fair Labor
Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and specifically, the collective

action provision of 29 U.S.C. § 216(b), to remedy violations of unpaid overtime provisions of the FLSA by Defendants.

2.  Plaintiffs also bring this action on behalf of themselves and a putative class of painters who seek to recover New York State mandated prevailing wages and supplemental benefits under the New York Labor Law ("NYLL").

3.  Plaintiffs also seek to recover overtime wages under the NYLL.

4.  Plaintiffs, construction workers in Brooklyn, New York, who painted building interiors, are current and former employees of BW Corp, a construction company that employs workers to paint residential buildings.

5.  The Defendant Corporations work pursuant to a contract on publicly funded construction projects in New York City.

6.  One of these locations included Stone House, located at 91 Junius Street, Brooklyn, New York.

7.  Stone House was a 60/40 affordable housing project funded by the New York City Department of Housing Preservation and Development ("HPD") and the New York State Homeless Housing and Assistant Program.

8.  Stone House was completed in 2018.

9.  Plaintiffs were not paid the prevailing wage and supplemental benefits for the occupation "Painter-Brush & Roller" in Brooklyn according to the New York City Prevailing Wage Schedule, as required by statutorily required contractual terms set forth in the NYLL, Article 8, § 220.

10. Plaintiffs bring this action on behalf of themselves and a class of similarly situated current and former employees of Defendants, pursuant to FRCP Rule 23, as third-party beneficiaries, for Defendants' breach of contract.

11. Defendants failed to comply with the statutorily required provision of all publicly financed contracts entered into in the State of New York to abide by NYLL § 220, requiring the payment of prevailing wages and supplemental benefits as set by the New York City Comptroller.

## JURISDICTION & VENUE

12. This Court has jurisdiction over this action under 28 U.S.C. § 1331, 29 U.S.C. §§ 216(b)(c) and 217; and 28 U.S.C. § 1337.

13. This Court has supplemental jurisdiction over the New York state law claims under the principles of pendent and ancillary jurisdiction.

14. Venue is proper in this district under 28 U.S.C. § 1391(b)(c), because all or a substantial part of the events or omissions giving rise to the claims occurred in this district.

## PARTIES

**Plaintiffs and Putative Class Members**

15. Plaintiffs and other members of the putative class are construction workers in Brooklyn, New York.

16. At various times throughout the relevant period, Plaintiffs, as well as other members of the putative class, were jointly employed by Defendants and were employees within the meaning of the NYLL, Article 6, § 190(2).

17. Plaintiffs were also covered employees within the meaning of the FLSA.

**Britannica Floor Covering, Inc.**

18. Britannica Floor Covering, Inc. is a construction business incorporated in the State of New York, with its principal place of business at 1798 Merrick Rd., Merrick, NY 11566.

19. On information and belief, BFC Inc. provided and continues to provide painting services as both a contractor and subcontractor on numerous public works projects in New York City throughout the relevant period.

20. Upon information and belief, Michael Kahoud is the President and Chief Executive Officer of BFC Inc.

21. At all times relevant to this action, Defendant BFC Inc. was an "enterprise engaged in interstate commerce" within the meaning of the FLSA. BFC Inc. has (1) employees engaged in commerce or in the production of goods for commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and (2) an annual gross volume of sales in excess of $500,000.00.

**The Best Wallcovering Corp**

22. The Best Wallcovering Corp is a construction business incorporated in New York with its principal place of business at 16 Park Place, Port Chester, NY 10573.

23. BW Corp has been engaged in business as a prime contractor for numerous public works projects in New York City.

24. On information and belief, Kenny V. Cuadros is the owner of BW Corp.

25. Along with Cuadros, M. Cherres and R. Cherres manage BW Corp.

26. M. Cherres and R. Cherres are brothers (the "Cherres Brothers").

27. At all times relevant to this action, Defendant BW Corp was an "enterprise engaged in interstate commerce" within the meaning of the FLSA. BW Corp has (1) employees engaged in commerce or in the production of goods for commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and (2) an annual gross volume of sales in excess of $500,000.00.

## Michael Kahoud

28. Upon information and belief, Michael Kahoud maintains control, oversight and the direction of BFC, Inc.

29. Defendant Michael Kahoud is sued individually in his capacity as an owner, officer and/or agent of BFC, Inc.  Defendant Kahoud exercises sufficient control over BFC, Inc. to be considered Plaintiffs' employer under the NYLL, and at all times material hereto said defendant had the authority to hire and fire Plaintiffs and established and maintained policies regarding the pay practices at BFC, Inc.

30. Defendant Kahoud employed Plaintiff at all times relevant.

31. Defendant Kahoud had substantial control over Plaintiffs' working conditions and practices alleged herein.

## Kenny V. Cuadros

32. Upon information and belief, Kenny V. Cuadros maintains control, oversight and the direction of BW Corp.

33. Defendant Cuadros is sued individually in his capacity as an owner, officer and/or agent of BFC, Inc.  Defendant Cuadros exercised sufficient control over BFC, Inc. to be

considered Plaintiffs' employer under the NYLL, and at all times material hereto said defendant had the authority to hire and fire Plaintiffs and established and maintained policies regarding the pay practices at BW Corp.

34. Defendant Cuadros employed Plaintiffs at all times relevant.

35. Defendant Cuadros had substantial control over Plaintiffs' working conditions and practices alleged herein.

**Manuel Cherres**

36. Upon information and belief, Manuel Cherres was a manager for BW Corp on the Stone House project.

37. Defendant M. Cherres is a person engaged in business in Kings County, who is sued individually in his capacity as an owner, officer and/or agent of BW Corp.  Defendant M. Cherres exercised sufficient control over BW, Corp to be considered Plaintiffs' employer under the NYLL, and at all times material hereto said defendant had the authority to hire and fire Plaintiff and established and maintained policies regarding the pay practices at BW Corp.

38. Defendant M. Cherres was Plaintiffs' supervisor at all times when Plaintiffs were employed by BW Corp. and BFC, Inc.

39. Defendant M. Cherres had substantial control over Plaintiffs' working conditions and practices alleged herein.

**Rodolfo Cherres**

40. Upon information and belief, Rodolfo Cherres was a manager for BW Corp on the Stone House project.

41. Defendant R. Cherres is a person engaged in business in Kings County, who is sued individually in his capacity as an owner, officer and/or agent of BW Corp. Defendant R. Cherres exercised sufficient control over BW Corp. to be considered Plaintiffs employer under the NYLL, and at all times material hereto said defendant had the authority to hire and fire Plaintiff and established and maintained policies regarding the pay practices at BW Corp.

42. Defendant R. Cherres was Plaintiffs' supervisor at all times when Plaintiffs were employed by BW Corp. and BFC Inc.

43. Defendant R. Cherres had substantial control over Plaintiffs' working conditions and practices alleged herein.

## INDIVIDUAL FACTUAL ALLEGATIONS

### Deyson Cardona Vargas

44. From May 2017 through August 2017, Deyson Cardona Vargas worked as a painter for Defendants.

45. Cardona worked on the HPD project at 91 Junius St., Brooklyn, NY 11212.

46. Cardona's direct supervisors were Manuel Cherres and Rodolfo Cherres.

47. Plaintiff worked for Defendants 5 days per week.

48. Cardona regularly worked two different shifts.

49. The first shift was from 8:00 am to 4:00 pm.

50. The second shift was from 4:30 pm to either 11 pm or 12 am.

51. Cardona sometimes worked on a double shift.

52. Both shifts provided for a half an hour lunch break.

53. Cardona's job duties were applying drywall, painting and wall skin for the Stone House at 91 Junius St. in Brooklyn.

54. Defendants paid Cardona in a variety of ways

55. Sometimes Defendants paid Cardona completely in cash.

56. Other times Defendants paid Cardona entirely by check (without withholdings).

57. Other times, Defendants paid Cardona both by check and cash.

58. Cardona was sometimes paid in check by BW Corp and sometimes paid by BFC Inc.

59. Examples of payments by checks to Cardona by BW Corp. and BFC. Inc. are annexed hereto as Exhibit B.

60. Cardona never received the prevailing wage or supplemental benefits rate.

61. Cardona was never paid time and one half when he worked more than 40 hours a week.

**Armando Medina**

62. From June 2017 through November 2017, Armando Medina worked as a painter for Defendants.

63. Medina worked on the HPD project at 91 Junius St., Brooklyn, NY 11212, which was a HPD housing project subject to the applicable prevailing wage laws.

64. Medina's direct supervisors were Manuel Cherres and Rodolfo Cherres.

65. For the first two months, Medina worked 8 am to 4:00 pm or 4:30 pm with a half hour meal break, 5 days per week.

66. Starting in August 2017 through the end of his employment, Medina worked 2 pm to 9 or 9:30 pm each day with a half hour meal break, 5 days per week.

67. Medina was paid by check $650 every week. Medina did not receive deductions for withholdings from his check.

68. Medina sometimes worked double shifts.

69. When Medina worked a double shift, he would work more than 40 hours a week.

70. When other employees worked a double shift, because they were assigned to work at least five days a week, they would also work more than 40 hours a week.

71. When Medina was hired, Manuel Cherres held a meeting with Medina and the other painters.  Manuel Cherres told the workers that the wage for a city building project should be $48.50, but because they were working for a contractor and not directly for the state, their rate of pay would be only $15 per hour.

72. From November 6 through November 10, 2018, Medina was not paid anything for his last week of work.

73. Cardona was never paid time and one half when he worked more than 40 hours a week.

**Edward Gomez**

74. From mid March through May 23, 2017, Edward Gomez worked as a painter for Defendants.

75. Gomez was scheduled to work Mondays through Fridays from 3:30 pm until 11 pm.

76. Gomez worked on the HPD project at 91 Junius St., Brooklyn, NY 11212.

77. On a few occasions, Gomez worked double shifts.

78. At first, Gomez was paid at a rate of $150.00 per day.

79. Gomez would receive his payments from Defendants at the end of the week in cash.

80. However, on several occasions, Gomez did not receive his payments until Monday or Tuesday of the following week.

81. Later into his work for Defendants, Gomez began to get paid by checks.

82. Gomez was paid different amounts each week, varying from $350.00, $450.00 and $500.00

83. Gomez's supervisor was Rodolfo Cherres.

84. Rodolfo Cherres explained to Gomez that if Gomez was asked how much he was getting paid, Gomez should respond $52.00 per hour.

85. Gomez was never paid time and one half when he worked more than 40 hours a week.

## FLSA COLLECTIVE ACTION ALLEGATIONS

86. The claims in this Complaint arising out of the FLSA are brought by Plaintiffs on behalf of themselves and other similarly situated persons who are current and former employees of Defendants since the date three years prior to the filing of this Complaint who elect to opt-in to this action (the "FLSA Collective").

87. The FLSA Collective Plaintiffs consist of approximately 35 similarly situated current and former employees of Defendants, who have been victims of Defendants' policies and practices that have violated their rights under the FLSA, by *inter alia,* willfully denying them overtime wages.

88. Defendants are liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiffs and the FLSA Collective Plaintiffs.

89. As part of its regular business practice, Defendants have intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiffs and the FLSA Collective Plaintiffs. This policy and pattern or practice includes, but is not limited to:

    (a)    failing to pay its employees, including Plaintiffs and the FLSA Collective Plaintiffs, the appropriate premium overtime wages for hours worked in excess of 40 hours per workweek; and

(b)    failing to record all of the time that its employees, including Plaintiffs and the FLSA Collective Plaintiffs, have worked for the benefit of Defendants.

90.  Defendants' unlawful conduct, as described in this Complaint, is pursuant to a company policy or practice of minimizing labor costs by failing to adequately compensate Plaintiffs and the FLSA Collective Plaintiffs for the overtime hours worked.

91.  Defendants are aware or should have been aware that federal law required them to pay Plaintiffs and the FLSA Collective Plaintiffs overtime premiums for hours worked in excess of 40 per workweek.

92.  Plaintiffs and the FLSA Collective Plaintiffs perform or performed the same primary duties and were subject to the same policies and practices by Defendants.

93.  Defendants' unlawful conduct is widespread, repeated and consistent.

94.  There are many similarly situated current and former non-exempt workers who have been denied overtime wages in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it. This notice should be sent to the FLSA Collective Plaintiffs pursuant to 29 U.S.C. § 216(b).

95.  Those similarly situated employees are known to Defendants, are readily identifiable, and can be located through Defendants' records.

## CLASS ALLEGATIONS

96.  Plaintiffs bring their NYLL claims and breach of contract claim on their own behalf and on behalf of a class of persons under FRCP 23 consisting of all individuals who performed painting work for Defendants and who failed to receive the prevailing wage and supplemental benefits rate, as set by the relevant New York City Prevailing Wage Schedule, for any and all hours worked on publicly financed construction projects at

any time during the six years prior to the filing of this case or between filing and the entry of judgment in this case ( the "Class").

97.  The persons in the class identified above are so numerous that joinder of all members is impracticable.  Although the precise number of such persons is presently unknown to Plaintiffs and calculation of such numbers would require facts in the sole control of Defendants, upon information and belief, there are more than 50 members of the class during the class period.

98.  The claims of Plaintiffs are typical of the claims of the Class.

99.  Plaintiffs will fairly and adequately protect the interest of the Class.

100. A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation where the individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit in court against corporate defendants. The members of the Class have been damaged and are entitled to recovery as a result of Defendants' common and uniform policies, practices, and procedures. Although the relative damages suffered by individual class members are not *de minimus*, such damages are small compared to the expense and burden of individual prosecution of this litigation.  In addition, class action litigation and certification is superior because it will obviate the need for unduly duplicative litigation, which might result in inconsistent judgments about Defendants' practices.

101. Defendants have acted on grounds generally applicable to the Class, thereby making declaratory relief appropriate for the class.

102. There are questions of law and fact common to the class which predominate any questions solely affecting individual members of the class, including:

    a.   Whether Defendants failed to keep true and accurate time records for all hours worked by Plaintiffs and the Class;

    b.   What proof of hours worked is sufficient where employers fail in their duty to maintain true and accurate time records;

    c.   Whether BW Corp entered into certain contracts with various government agencies to provide painting services for public works projects;

    d.   Whether Defendant BW Corp entered into contracts with various government agencies to provide painting services for public works projects and employed BFC Inc., as a subcontractor; and

    e.   Whether Defendants failed to ensure that Plaintiffs and the putative class were paid the prevailing wage and required supplements for all work performed on publicly financed construction projects, per contract terms statutorily required to be included in all public works contracts.

## CLASSWIDE FACTUAL ALLEGATIONS

103. Plaintiffs and members of the Class ("Class Members") were employed by and worked for Britannica Floor Covering, Inc. and The Best Wallcovering Corp.

104. Plaintiffs and Class Members, as part of their employment for BW Corp, worked on the public project in Brooklyn, including but not limited to projects for which BW Corp. was engaged as the prime contractor and retained BFC Inc. as a subcontractor.

105. This project in Brooklyn was investigated by the New York City Housing Department ("NYC HPD") to ensure that Plaintiffs and the Class Members were paid the applicable

prevailing wage.  A copy of the letter from LaMonte Louis, Compliance Officer of the NYCHPD pertaining to the NYC HPD's investigation is annexed hereto as Exhibit A.

106. Defendants paid Plaintiffs and the Class Members both in cash and by check.

107. Sometimes the checks were made out to Plaintiffs by BFC Inc., and sometimes the checks were made out to Plaintiffs by BW Corp.  Copies of checks made out to Cardona by BFC Inc. and BW Corp are annexed hereto as Exhibit B.

108. As reflected in Exhibit B, these checks were made without withholdings even though Plaintiffs were employees and not independent contractors.

109. NYLL, Article 8, requires both contractors and subcontractors to keep certified payroll records of the hours worked and hourly wage rates paid to all laborers on publicly financed construction projects.

110. The hourly prevailing wage rate for the occupation "Painter – Brush & Roller" in Brooklyn, as set by the New York City Comptroller's Office, was substantially higher than what Defendants paid Plaintiffs and the Class Members – for example, it was $44.10 per hour for May 1, 2017 through June 30, 2017, and $45.50 per hour for July 1, 2017 through July 30, 2018.

111. The hourly rate of supplemental benefits for the occupation "Painter – Brush & Roller," as set by the New York City Comptroller's Office, was $27.02 for regular hours and $31.65 for overtime hours for May 1, 2017 through June 30, 2017, and $28.62 for regular hours and $33.25 for overtime hours for July 1, 2017 through June 30, 2018.

112. Upon information and belief, at no time were Plaintiffs and the Class Members paid the prevailing wage plus the supplemental benefit rate, for any hour worked.

113. Instead BW Corp paid the majority of Plaintiffs or Class Members at a daily rate of approximately $130-$150 per day, depending on the individual.

114. Employees were paid an hourly, daily or weekly wage, depending on the employee, and these wages were always below the supplemental benefit rate.

115. For example, some of the employees were paid only $10 an hour.

**BFC Inc.'s Policies**

116. As part of its regular business practice, BFC Inc. willfully and repeatedly engaged in a pattern, practice, and/or policy of violating the NYLL. This pattern or practice includes, but is not limited to:

   a.  Willfully failing to record all of the hours that its employees worked;

   b.  Willfully failing to retain true and accurate records of the wages paid to employees;

   c.  Willfully failing to pay Plaintiffs and Class Members the required prevailing wages and supplemental benefits.

117. At all relevant times, Defendant BFC Inc. failed to post and/or keep posted a notice explaining employees' rights under the NYLL.

118. NYLL, Article 8, § 220(3)(a) requires that all contracts and subcontracts entered into for the performance of public works in New York State include contract terms requiring that individuals who work pursuant to such contracts be paid the prevailing wage and supplements at rates to be determined by the New York City Comptroller.

119. This statutorily required promise to pay and ensure payment of the prevailing wages and supplements in the public works contracts was made for the benefit of all workers furnishing labor on the sites of public works projects and, as such, Plaintiffs and Class

Members furnishing such labor are the beneficiaries of that promise and the contracts entered into by Defendants and government agencies.

120. On information and belief, BFC Inc. entered into contracts with government agencies, including the New York City Department of Housing Preservation and Development, to provide painting services and employed Plaintiffs and Class Members to perform the required work.

121. In performance of Defendants' contracts and subcontracts on public works projects, Plaintiffs and Class Members performed painting services, including painting the interiors and exteriors of buildings.

122. Defendant BFC Inc. contracted BW Corp as a subcontractor to provide labor for the above-mentioned public works contracts, and BW Corp in turn employed Plaintiffs and Class Members to perform the required work.

123. For those projects for which BW Corp was engaged as the prime contractor, BW Corp sent supervisors to the work site of Plaintiffs and proposed class members every day.

124. Plaintiffs and the proposed class members did not sign in and sign out each day because Defendants did not provide any mechanism or procedure to do so.

125. Defendant BW Corp willfully failed to pay Plaintiffs and Class Members engaged in labor on said public works projects the prevailing wages and supplements as required by the above-mentioned contract terms.

126. Defendant BFC Inc. willfully failed to ensure that Plaintiffs and Class Members employed to fulfill said public works contracts were paid the prevailing wages and supplements as required by the above-mentioned contract terms.

127. Furthermore, NYLL, Article 8, requires both contractors and all subcontractors performing work on a public works project to post the prevailing wage schedule and supplement rates.

128. Defendants did not post the prevailing wage schedule and supplement rates at any of the work sites of the public works projects for which Plaintiffs provided labor.

129. NYLL, Article 8, requires contractors on public works projects to provide subcontractors with the schedule of prevailing wages and supplements.

130. For the projects for which BFC Inc. was engaged as the prime contractor, BFC Inc. failed to provide BW Corp with the schedule of prevailing wages and supplements.

131. NYLL, Article 8, requires that subcontractors on public works projects provide contractors with a verified statement attesting that the schedule of wages and supplements has been reviewed and received, and agreeing to pay the applicable prevailing wages and supplements.

132. For the public works projects for which Plaintiffs furnished labor, BW Corp and its owners did not provide BFC Inc. with a verified statement attesting that the schedule of wages and supplements has been reviewed and received, and agreeing to pay the applicable prevailing wages and supplements.

133. All of the work that Plaintiffs and Class Members performed was assigned by Defendants.

134. Plaintiffs and Class Members were generally paid through a combination of cash and check made out by either BW Corp or BFC Inc.

**BW Corp's Policies**

135. As part of its regular business practice, BW Corp willfully and repeatedly engaged in a pattern, practice, and/or policy of violating the NYLL. This pattern or practice includes, but is not limited to:

    a. Willfully failing to record all of the hours that its employees worked;

    b. Willfully failing to retain true and accurate records of the wages paid to employees;

    c. Willfully failing to pay Plaintiffs and Class Members the required prevailing wages and supplemental benefits.

136. At all relevant times, Defendant BW Corp failed to post and/or keep posted a notice explaining employees' rights under the NYLL.

137. Plaintiffs and Class Members, as part of their employment for Defendant BW Corp, regularly worked on public works projects throughout New York City financed by various city agencies.

138. NYLL, Article 8, requires that all contracts and subcontracts entered into for the performance of public works in New York State include contract terms requiring that individuals who work pursuant to such contracts be paid the prevailing wage and supplements at rates to be determined by the New York City Comptroller.

139. NYLL, Article 8, requires both contractors and all subcontractors performing work on a public works project to post the prevailing wage schedule and supplement rates.

140. NYLL, Article 8, requires contractors on public works projects to provide subcontractors with the schedule of prevailing wages and supplements.

141. NYLL, Article 8, requires that subcontractors on public works projects provide contractors with a verified statement attesting that the schedule of wages and

supplements has been reviewed and received, and agreeing to pay the applicable prevailing wages and supplements.

142. NYLL, Article 8, requires both contractors and subcontractors to keep certified payroll records of the hours worked and hourly wage rates paid to all laborers on publicly financed construction projects.

143. Plaintiffs and Class Members were not paid the prevailing wage or supplemental benefits rate as required by said contract terms.

144. The statutorily required promise to pay and ensure payment of the prevailing wage, supplements, and overtime in the public works contracts was made for the benefit of all workers furnishing labor on the sites of public works projects and, as such, Plaintiffs and Class Members furnishing such labor are the beneficiaries of that promise and the contracts entered into by Defendants and government agencies.

145. Upon information and belief, Defendant BFC Inc. entered into contracts with government agencies, including the New York City Department of Housing Preservation and Development, to provide painting services and employed Plaintiffs and Class Members to perform the required work.

146. Upon information and belief, Defendant BFC Inc. entered into numerous contracts for public works with governmental agencies, including the New York City Department of Housing Preservation and Development to provide, *inter alia*, painting services.

147. Upon information and belief, Defendant BFC Inc. hired Defendant BW Corp as a subcontractor to provide labor for the above-mentioned public works contracts, and BW Corp in turn employed Plaintiffs and Class Members to perform the required work.

148. Defendant BFC Inc. willfully failed to ensure that Plaintiffs and Class Members employed to fulfill said public works contracts were paid the prevailing wage, supplements, and overtime, as required by the above-mentioned contract terms.

149. In performance of Defendants' contracts and subcontracts on public works projects, Plaintiffs and Class Members performed painting services, including painting the interiors and exteriors of buildings.

150. Upon information and belief, BFC Inc. paid the majority of Plaintiffs or Class Members at a daily rate of between $130 and $150, depending on the individual.

151. Upon information and belief, at no time were Plaintiffs or Class Members paid the prevailing wage plus the supplemental benefit rate for any hour worked.

152. Defendants' unlawful conduct as herein described has been widespread, repeated, and consistent.

**Defendants' Violations of the Wage Theft Protection Act**

153. The NYLL and Wage Theft Prevention Act require employers to provide all employees with a written notice of wage rates.

154. Plaintiff Cardona was never given a notice containing the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with NYLL 191; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; and anything otherwise required by law.

20

155. Plaintiff Medina was never given a notice containing the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with NYLL 191; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; and anything otherwise required by law.

156. Plaintiff Gomez was never given a notice containing the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with NYLL 191; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; and anything otherwise required by law.

157. Upon information and belief, Defendants never gave wage notices to nor were wage notices signed by any other employee of Defendants.

### FIRST CAUSE OF ACTION
### Fair Labor Standards Act-Overtime Wages
### (Brought on Behalf of Plaintiff and the FLSA Collective Plaintiffs)

158. Plaintiffs, on behalf of themselves and the FLSA Collective Plaintiffs, re-allege and incorporate by reference all allegations in all preceding paragraphs.

159. The overtime wage provisions set forth in the FLSA, 29 U.S.C. §§ 201 *et seq.*, and the supporting federal regulations, apply to Defendants and protect Plaintiffs and the FLSA Collective Plaintiffs.

160. Plaintiffs and the FLSA Collective Plaintiffs worked in excess of forty hours during some workweeks in the relevant period.

161. Defendants willfully failed to pay Plaintiffs and the FLSA Collective Plaintiffs the appropriate overtime premiums for all hours worked in excess of 40 hours per workweek, as required by the FLSA, 29 U.S.C. §§ 201 *et seq.*, and the supporting federal regulations.

162. Defendants' unlawful conduct, as described in this Complaint, has been willful and intentional. Defendants are aware or should have been aware that the practices described in this Complaint were unlawful. Defendants have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiffs and the FLSA Collective Plaintiffs

163. Because Defendants' violations of the FLSA have been willful, a three year statute of limitations applies, pursuant to 29 U.S.C. §§ 201 *et seq.*

164. As a result of Defendants' willful violations of the FLSA, Plaintiff and the FLSA Collective Plaintiffs have been deprived of overtime compensation in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs and other compensation pursuant to 29 U.S.C. §§ 201 *et seq.*

**SECOND CAUSE OF ACTION**
**Unpaid Overtime Wages Under New York Labor Law**
**(Brought on Behalf of the Class)**

165. Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

166. At all times relevant to this action, Plaintiffs were employed by Defendants within the meaning of NY Labor Law § 652 and 12 NYCRR §142-2.2.

167. Defendants failed to pay Plaintiffs the overtime premium of one and a half times the regular hourly rate of pay, in violation of the NY Labor Law.

168. Defendants' failure to pay required overtime was willful.

169. As a result of Defendants' NY Labor Law violations, Plaintiff is entitled to recover from Defendants unpaid overtime wages and liquidated (double) damages, as well as reasonable attorneys' fees and the costs of this action, including interest, pursuant to the NY Labor Law.

### THIRD CAUSE OF ACTION
#### Breach of Contract
#### (On Behalf of the Class)

170. Plaintiffs repeat and re-allege the allegations contained in all previous paragraphs herein.

171. NYLL, Article 8, § 220(3)(a), (b) requires that all contracts to which the state, public benefit corporation, or a municipal corporation is a party "shall contain a provision that each laborer, workman, or mechanic, employed by such contractor, subcontractor or other person about or upon such public work, shall be paid the [prevailing] wage[]" and supplements for each hour worked.

172. The prevailing wage and supplement rates for Painters in Brooklyn is set by the New York City Comptroller, which has determined the rate to be $44.10 per hour in wages plus supplemental benefits for the effective period of 7/1/2016 – 4/30/2017.

173. The statutorily required incorporation of such terms into all public works contracts and subcontracts in the State of New York exists for the benefit of Plaintiffs and Class Members.

174. Defendants breached their public works contracts and/or subcontracts by failing to pay Plaintiffs and Class Members the prevailing wage and supplemental benefits rate for all hours worked in performance of said contracts.

## FOURTH CAUSE OF ACTION
### (Pled in the Alternative)
### Unjust Enrichment
### (On Behalf of the Class)

175. Plaintiffs repeat and re-allege the allegations contained in all previous paragraphs herein.

176. Plaintiffs and Class Members have performed a significant amount of work for which they have not been paid.

177. Upon information and belief, when Defendants entered into the public works contracts and/or subcontracts, they agreed to pay the required prevailing wage, overtime, and supplemental benefit rates of pay to Plaintiffs and Class Members.

178. Upon information and belief, Defendants billed the public owner, such as the New York City Department of Housing Preservation and Development, overtime and supplemental benefit rates that were not paid to Plaintiffs and Class Members.

179. As a result of this failure to pay said wages, Defendants were unjustly enriched for work and services performed by Plaintiffs and Class Members.

## FIFTH CAUSE OF ACTION
### New York Labor Law – Failure to Provide Annual Wage Notices
### (Brought on Behalf of Plaintiff and the Class)

180. Plaintiffs, on behalf of themselves and the Class, re-allege and incorporate by reference all allegations in all preceding paragraphs.

181. Defendants willfully failed to supply Plaintiffs and the class with wage notices, as required by NYLL, Article 6, § 195(1), in English or in the language identified by

Plaintiffs as their primary language, containing Plaintiffs' rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the regular payday designated by the employer in accordance with NYLL, Article 6, § 191; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

182. Through their knowing or intentional failure to provide Plaintiffs and the class with the wage notices required by the NYLL, Defendants have willfully violated NYLL, Article 6, §§ 190 et seq., and the supporting New York State Department of Labor Relations regulations.

183. Due to Defendants' willful violations of NYLL, Article 6, § 195(1), Plaintiffs and the class are entitled to statutory penalties of fifty dollars per work day that Defendants failed to provide Plaintiffs with wage notices, or a total of five thousand dollars each, reasonable attorneys' fees, costs and injunctive and declaratory relief, as provided for by the NYLL, Article 6, § 198(1-b).

### SIXTH CAUSE OF ACTION
### New York Labor Law- Failure to Provide Wage Statements
### (Brought on behalf of Plaintiff and the Class)

184. Plaintiffs, on behalf of themselves and the Class, re-allege and incorporate by reference all allegations in all preceding paragraphs.

185. Defendants have willfully failed to supply Plaintiffs and the class with accurate statements of wages as required by NYLL, Article 6, § 195(3), containing the dates of

work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

186. Through their knowing or intentional failure to provide Plaintiffs and the class with the wage statements required by the NYLL, Defendants have willfully violated NYLL, Article 6, §§ 190 *et seq.*, and the supporting New York State Department of Labor Relations regulations.

187. Due to Defendants' willful violations of NYLL, Article 6, § 195(3), Plaintiffs and the class are entitled to statutory penalties of two hundred fifty dollars for each work day that Defendants failed to provide Plaintiffs with accurate wage statements, or a total of five thousand dollars each, reasonable attorneys' fees, costs and injunctive and declaratory relief, as provided for by NYLL, Article 6, § 198(1-d).

### SEVENTH CAUSE OF ACTION
**Failure to Pay Earned Wages in Violation of New York Labor Law**
<u>**(Brought on Behalf of Plaintiff Medina)**</u>

188. Plaintiffs re-allege and corporate by reference all allegations in all preceding paragraphs.

189. At all relevant times, Plaintiff Medina was an "employee" within the meaning of the NYLL. Similarly, at all relevant times, Defendants, including the individually named Defendants, were "employers" within the meaning of the NYLL.

190. Defendants failed to pay Plaintiff Medina his earned wages for the periods of time and in the manner as set forth above.

191. Defendants' failure to pay Plaintiff his earned wages was willful and not based in any good faith belief of compliance with NYLL § 663, *et seq.*

192. As a result of the foregoing, Plaintiff has been denied wages required under NYLL § 663 *et seq.*, and is entitled to an award of unpaid wages in an amount to be determined at trial, plus liquidated damages, prejudgment

## PRAYER FOR RELIEF

WHEREFORE Plaintiffs, individually and on behalf of all others similarly situated, request the following relief:

a.  That, at the earliest possible time, Plaintiffs be permitted to give notice of this class action, or that the court issue such notice to all persons who are presently, or have at any time during the six years immediately preceding the filing of this suit, up through and including the date of this court's issuance of court-supervised notice, been employed by Defendants Britannica Floor Covering, Inc. and The Best Wallcovering Corp, and Michael Kahoud, Kenny Cuadros, Manuel Cherres and Rodolfo Cherres, individually. Such notice shall inform them that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit if they believe they were denied prevailing wage and supplemental benefits compensation;

b.  Certification of this case as a class action pursuant to Rule 23.;

c.  Designation of Deyson Cardona Vargas, Armando Medina and Edward Gomez as representatives of the Class, and counsel of record as class counsel;

d.  Damages for the unpaid overtime wages due to Plaintiffs, in an amount to be determined at the trial of the action, liquidated damages as provided by the FLSA and NYLL, interest, attorneys' fees, and the cost of the action;

e.  Damages for the unpaid minimum wages due to Plaintiffs, in an amount to be determined at the trial of the action and liquidated damages as provided by the NYLL, interest, attorneys' fees and the cost of the action;

f.  Unpaid wages, attorneys' fees, costs, and interest pursuant to the NYLL, Article 6, § 198(1-a);

g.  An additional and equal amount of unpaid wages as liquidated damages pursuant to NYLL, Article 6, § 198;

h.  Penalties of fifty dollars for each work day that Defendants failed to provide Plaintiffs with a wage notice, or a total of five thousand dollars, as provided for by NYLL, Article 6, § 198;

i.  Penalties of two hundred and fifty dollars for each work day that Defendants failed to provide Plaintiffs with accurate wage statements, or a total of five thousand dollars as provided for by NYLL, Article 6, § 198;

j.  The difference between the wages paid to Plaintiffs and Class Members for work on public works projects and the prevailing wage plus supplemental benefit rate at the time, as determined by the New York City Comptroller, and interest on said sum;

k.  Issuance of a declaratory judgment that the practices of Defendants complained of herein are unlawful under the NYLL;

l.  Damages for unpaid earned wages due to Plaintiff in an amount to be determined at the trial of the action, liquidated damages as provided by the NYLL, interest, attorneys' fees and the cost of the action

Dated: May 21, 2019
      New York, New York

**BERANBAUM MENKEN LLP**

By:    */s Bruce Menken*
       Bruce E. Menken
       80 Pine Street, 33rd Floor
       New York, New York 10005
       (212) 509-1616

**THE LAW OFFICES OF JACOB ARONAUER**

By:    */s Jacob Aronauer*
       Jacob Aronauer
       225 Broadway, 3rd Floor
       New York, NY 10007
       (212) 323-6980

       *Attorneys for Plaintiffs*

# EXHIBIT A



**Department of
Housing Preservation
& Development**
nyc.gov/hpd

MARIA TORRES-SPRINGER
Commissioner
DAVID QUART
Deputy Commissioner
BAABA HALM
Assistant Commissioner

Office of Strategy, Research and Communications
Division of Economic Opportunity & Regulatory Com
100 Gold Street, 4th Floor, Section 4M
New York, N.Y. 10038

September 22nd, 2017

Jason Cardona
93-05 91st Street
Woodhaven, NY 11421

| | |
|---|---|
| **CONTRACTOR:** | **Britannica** |
| **PROJECT:** | **The Glenmore \| 91 Junius Street, Brooklyn** |
| **E.O. #:** | **20150131** |

Mr. Cardona:

In order to ensure that you were properly paid for work done at the site stated above, please complete the following and return this letter in the enclosed envelope to:

**New York City Department of Housing Preservation and Development
Regulatory Compliance | Labor Monitoring Unit
100 Gold Street, 4th Floor, Section 4-01
New York, N.Y. 10038.**

Include copies of all pay stubs and/or cancelled pay checks, if available.

If you worked at more than one trade, please list each trade and the salary you received. Also list other projects you worked on with the above contractor (include trades and salaries). Your answers are kept strictly confidential.

If you have any questions, please contact **Mr. LaMonte Louis** at **(212) 863-5483**.

Sincerely,

*L. P. Louis, II*

LaMonte Louis, Compliance Officer
Labor Monitoring Unit

Cc: File

HPD FORM 4730

# EXHIBIT B

●●●●○ HOME 3G 15:44 ⊕ ⊿ ● ⁂ 44% ▭ ⁀⚡

< **Corona** Editar
20 de maio de 2017 18:55



  



●●●●○ HOME  3G        15:53      ⊕ ⌁ ● ✳ 49% ▭ ⅄⚡

# Corona
## 20 de maio de 2017  18:56

<                                               **Editar**

